**SIGNED THIS: May 8, 2014**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 14-70013 |
| VIRGIL MATTHEW BECKUM and ) | |
| JAMIE LYNN BECKUM, ) | Chapter 7 |
| ) | |
| Debtors. ) | |

# O P I N I O N

Before the Court is a motion to redeem a motor vehicle filed by Virgil Matthew Beckum and Jamie Lynn Beckum ("Debtors") and the objection to the motion filed by Ideal Auto Sales, Inc. ("Ideal Auto"). At issue is the proper standard for the valuation of a vehicle sought to be redeemed. Because replacement value is the required standard and the Debtors failed to present evidence of the replacement value of the vehicle they seek to redeem, their motion must be denied.

-1-

## I. Factual and Procedural Background

The Debtors filed for relief under Chapter 7 of the Bankruptcy Code on January 7, 2014. On March 28, 2014, they filed a Motion to Redeem ("Motion") their 2004 Chevrolet Malibu by paying the sum of $1503 to the lienholder, Ideal Auto. Ideal Auto objected, contending that the retail value of the vehicle was actually $4928 — the amount of the secured portion of the debt listed on Ideal Auto's proof of claim. An evidentiary hearing was held on the matter.

At the hearing, the Debtor, Jamie Lynn Beckum, testified that she and her husband had owned the 2004 Malibu for approximately one year. According to the Debtor, the vehicle has about 145,000 miles on it and is in need of general maintenance including a tune-up, alignment, brake replacement, and front strut replacement. The Debtor also testified that there are a number of scratches and dents on the vehicle, some of which were present when the Debtors purchased it. There is a pre-existing cigarette burn on the car's interior and some tar stains on the carpet from Mr. Beckum's work boots.

The Debtors offered into evidence, over Ideal Auto's objection, trade-in valuations of a 2004 Chevrolet Malibu from the National Automobile Dealers Association ("NADA") and Kelley Blue Book websites.[1] According to the NADA, the trade-in value of a 2004 Chevrolet Malibu with a six-cylinder engine and similar mileage would range from $1625 to $3025, depending on the condition of the

---

[1] There is ample authority to admit the NADA and Kelley Blue Book valuations into evidence. Rule 803(17) of the Federal Rules of Evidence provides a hearsay exception for "[m]arket quotations, lists, directories, or other compilations that are generally relied on by the public or by persons in particular occupations." *See also In re McElroy*, 339 B.R. 185, 188 (Bankr. C.D. Ill. 2006).

vehicle. And according to the Kelley Blue Book, the trade-in value of a 2004 Chevrolet Malibu with a four-cylinder engine and similar mileage would range from $1015 to $1609, again depending on its condition. Presumably based on some comparison or averaging of these numbers, the Debtors calculated the trade-in value of their vehicle to be $1503, describing it as being in average condition. At the hearing, the Debtors' attorney argued that the proper standard for redemption of personal property is the liquidation value. And the Debtors assert that the trade-in value of a vehicle is the best approximation of liquidation value. Thus, the Debtors conclude that $1503 is the amount needed to be paid to Ideal Auto to redeem their vehicle.

  Ideal Auto presented the testimony of Jeff Polen. Mr. Polen has significant experience in automobile sales. He has eleven years of experience in retail automobile sales, but for the last fourteen years he has worked in the wholesale automobile auction business. Mr. Polen stated that all of his business is currently conducted through online auctions. He also stated that he uses Manheim Market Reports rather than the NADA or Kelley Blue Book websites to assess the approximate value of vehicles before purchasing them. When asked what it would cost for a dealer to replace a vehicle similar to the one at issue here, Mr. Polen stated that it would cost over $4000 to get it ready for retail. Specifically, Mr. Polen testified that a 2004 Chevrolet Malibu would sell at a wholesale auction for between $2600 and $2800. Then, according to Mr. Polen, it would cost the dealer an additional $1000 to $1200 to recondition the vehicle. Finally, after a mark-up of $1200 to $1500 for cash sales and $2000 to $2500 at "buy here, pay here" lots such as those operated by Ideal Auto, the car would be put up for sale in the retail market.

The hearing concluded with arguments from both sides. The Debtors argued that the proper valuation standard is not retail value or even wholesale value, but liquidation value. In determining the liquidation value, the Debtors argued that the trade-in value of a vehicle is the best approximation of that number, and that NADA and Kelley Blue Book reports are authoritative. Ideal Auto, on the other hand, argued that wholesale value was the best approximation of liquidation value. But Ideal Auto also argued that the standard for redemption is not necessarily liquidation value, but something closer to fair market value.

The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. They are core proceedings under 28 U.S.C. §157(b)(2)(O).

## III. Legal Analysis

Section 722 of the Code allows a Chapter 7 individual debtor to redeem secured property "by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien in full at the time of redemption." 11 U.S.C. §722. Section 506(a)(1) defines an allowed secured claim as "the value of such creditor's interest in the estate's interest in such property[.]" 11 U.S.C. §506(a)(1). And that value is to be determined "in light of the purpose of the valuation and of the proposed disposition or use of such property[.]" *Id.* Before passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the majority of courts held that the appropriate valuation standard for redemption was the amount the creditor would receive upon

liquidation of the collateral. *See In re Redpath*, 2009 WL 3242107, at *2 (Bankr. C.D. Ill. Sept. 30, 2009) (collecting cases). And because many creditors dispose of repossessed collateral at auction, the prevailing standard was that of wholesale value. *Id.* (citing *In re Neal*, 314 B.R. 198, 200 (Bankr. N.D. Iowa 2004)). Other courts referred to the standard as foreclosure value or liquidation value. *See In re Podnar*, 307 B.R. 667, 670 (Bankr. W.D. Mo. 2003).

But BAPCPA added §506(a)(2), pronouncing a new rule. That section provides:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. §506(a)(2).

The statute now makes it clear that replacement or retail value applies in Chapter 7 and Chapter 13 cases, irrespective of the proposed disposition of the property. *Redpath*, 2009 WL 3242107, at *2; *see also In re Herrera*, 454 B.R. 559, 561 (Bankr. E.D.N.Y. 2011).

At the hearing, the Debtors relied on *Podnar* in arguing that liquidation value is the appropriate standard for determining redemption value, and that the NADA trade-in value of a vehicle would be the best approximation of that number. But *Podnar* is outdated and no longer helpful in light of the BAPCPA amendments to §506(a). The addition of §506(a)(2) makes clear that replacement value applies

in Chapter 7 cases, notwithstanding the "proposed disposition" provision of §506(a)(1). Particularly relevant to redemption motions under §722, replacement value is specifically defined in the context of "property acquired for personal, family, or household purposes" as "the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." 11 U.S.C. §506(a)(2); *see also Redpath*, 2009 WL 3242107, at *2.

Debtors only presented evidence of liquidation value which does not meet the required standard for valuation. And although the NADA report offered by the Debtors lists a "clean retail" value of $5000, no evidence was presented as to the retail or replacement value of a vehicle in average condition, the asserted and undisputed condition of the Debtors' Chevrolet Malibu. Further, the trade-in value reports offered by the Debtors describe two different vehicles. The NADA report describes a 2004 Chevrolet Malibu with a six-cylinder engine, while the Kelley Blue Book report describes the same make and model with a four-cylinder engine. The Purchase Agreement attached to Ideal Auto's proof of claim discloses that the Debtors' Malibu has a four-cylinder engine, which undercuts the relevance of the NADA report to the current dispute. As such, the Debtors have offered nothing that would allow the Court to determine the actual replacement value of their 2004 Chevrolet Malibu.

The Debtors had the burden of proving by a preponderance of the evidence the replacement value of the vehicle they seek to redeem. *Herrera*, 454 B.R. at 561; *In re Caterino*, 2005 WL 3263922, at *1 (Bankr. D. Mass. July 20, 2005).

Having failed to meet their burden, they cannot prevail on their Motion. If, however, Ideal Auto had established the replacement value with its evidence, this Court might have been inclined, as other courts have been, to enter an order allowing the redemption conditioned upon payment of an amount higher than what the Debtors proposed in their Motion. *See Redpath*, 2009 WL 3242107, at *4. Unfortunately for Ideal Auto, its evidence also fell well short of what was needed to establish the replacement value of the 2004 Chevrolet Malibu.

Although the Court found Mr. Polen's testimony to be credible, it largely pertained to the wholesale automobile market. Mr. Polen testified to the cost to a dealer to replace a vehicle at "clean retail" on their lot, stating that it would cost a dealer over $4000 after auction and reconditioning expenses. But the standard is the cost to a debtor to replace their vehicle with one of similar age and condition, not the cost to a dealer to purchase the vehicle and recondition it to "clean retail" value. Mr. Polen also testified about the potential mark-up on vehicles for retail sale stating that the mark-up could range from $1200 for cash sales to $2500 at finance lots. Importantly, Mr. Polen has not seen or inspected the actual vehicle involved here and, apparently, his opinions were not based on any specific information about the actual vehicle in question. Thus, although Mr. Polen provided testimony describing the general process of preparing and pricing a vehicle for retail sale, he provided little help in determining the replacement value of the Debtors' vehicle. The replacement value of the Debtors' vehicle, or one similar to it, would be based on the current condition of the vehicle and would not include the reconditioning costs Mr. Polen described because no reconditioning

will occur as part of the redemption. Further, the replacement value would not include the significant mark-up charged by finance lots such as Ideal Auto because a redemption must be made by a lump sum payment.

At the hearing, neither party focused on the correct valuation standard and neither presented evidence of the replacement value of the Debtors' vehicle. As such, nothing presented provided a basis for determining the amount of Ideal Auto's allowed secured claim and, therefore, the amount that must be paid by the Debtors to redeem their vehicle cannot be calculated. The Debtors' Motion, therefore, must be denied. But having clarified the appropriate valuation standard to be applied in motions to redeem property, the denial should be without prejudice.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###